**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **STEPHANIE MCKINNNEY,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **CLASS ACTION COMPLAINT** |
| ) | |
| **METLIFE, INC.,** ) | **JURY TRIAL DEMANDED** |
| **METROPOLITAN LIFE INSURANCE** ) | |
| **COMPANY,** ) | |
| **&** ) | |
| **METLIFE INSURANCE COMPANY,** ) | |
| **U.S.A., F.K.A. METLIFE INSURANCE** ) | |
| **COMPANY OF CONNECTICUT.** ) | |
| ) | |
| *Defendants.* ) | |
| ) | February 7, 2017 |

<u>**COMPLAINT**</u>

Plaintiff Stephanie McKinney on behalf of herself and all other similarly situated

current and former Long Term Disability Claim Specialists ("LTD Claim Specialists")[1]

employed by Defendants MetLife, Inc., Metropolitan Life Insurance Company, and

MetLife Insurance Company USA (collectively, "MetLife" or "Defendants") complains by

her attorneys as follows:

**I.   <u>OVERVIEW OF METLIFE'S VIOLATIONS OF FEDERAL AND</u>**
**<u>CONNECTICUT OVERTIME LAW</u>**

1.   This action seeks to remedy Defendants' illegal practices, whereby

Defendants deliberately and uniformly denied overtime compensation due Plaintiff

---

[1] As used herein, "LTD Claim Specialists" refers to all MetLife employees known as, *inter alia*, "Claim Specialists," "Senior Claim Specialists," "Case Managers," or "Senior Case Managers" who worked on long term disability insurance claims. "LTD Claim Specialists" also include MetLife employees who worked on long term disability insurance claims and performed substantially the same work as employees with the above job titles.

1

Stephanie McKinney and her fellow LTD Claim Specialists, in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Connecticut Minimum Wage Act ("MWA") Conn. Gen. Stat. § 31-58, *et seq.*

2.      Through its subsidiaries, which include Defendants Metropolitan Life Insurance Company and MetLife Insurance Company USA, Defendant MetLife, Inc. provides insurance, annuities, employee benefits and asset management services to approximately 100 million customers in 50 countries, including more than 90 of the top one hundred Fortune 500 companies.  In 2015, Defendant MetLife, Inc. reported $5.2 billion in net income.

3.      Despite their immensely profitable business, Defendants cheat LTD Claim Specialists out of overtime pay legally earned under federal and Connecticut law.

4.      For at least three years prior to the filing of this Complaint, Defendants routinely denied LTD Claim Specialists overtime compensation that the FLSA and MWA guarantee to employees who work more than 40 hours in a workweek.

5.      Prior to November of 2013, MetLife classified these LTD Claim Specialists as hourly employees and paid them overtime.

6.      In or about November of 2013, MetLife re-classified them as "exempt" from overtime pay under federal and Connecticut statutes and regulations—without any corresponding change in job duties.

7.      Accordingly, beginning in or about November of 2013, MetLife willfully denied overtime pay to Plaintiff and other LTD Claim Specialists who routinely work more than 40 hours per week.

8.      Upon information and belief, during the above mentioned period, MetLife failed to adequately keep track of LTD Claim Specialists' work hours.

## II.  JURISDICTION AND VENUE

9.      This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, because the action arises under a federal statute, 29 U.S.C. § 216(b).

10.     The Court has supplemental jurisdiction over the Connecticut Minimum Wage Act claims pursuant to 28 U.S.C. § 1367, as the claims under Connecticut state law arise from the same transaction or occurrence as Plaintiff and the Class's federal law claims.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

12.     Defendants are subject to personal jurisdiction in the State of Connecticut because they transact business in this state, and many of the wrongs alleged in this Complaint were committed in Connecticut.

## III.  PARTIES

13.     **Plaintiff Stephanie McKinney** resides in Charleston, South Carolina.  Ms. McKinney worked for MetLife in Bloomfield, Connecticut from September 2013 to July 2016 as an LTD Claim Specialist.

14.     **Defendant MetLife, Inc.** is, and at all times material hereto was, a corporation organized under the laws of the State of Delaware, with its headquarters in New York, New York. Defendant MetLife is an insurance group that provides life insurance, annuities, employee benefit and asset management services to clients throughout the United States and internationally. It therefore engages in interstate commerce or engages in the delivery of goods and services for commerce.

3

15.     **Defendant Metropolitan Life Insurance Company** is, and at all times material hereto was, a corporation organized under the laws of the State of New York, with its headquarters in New York, New York.   Defendant Metropolitan Life Insurance Company is a wholly-owned subsidiary of Defendant MetLife, Inc., and provides life insurance, annuities, employee benefit and asset management services to clients throughout the United States. It therefore engages in interstate commerce or engages in the delivery of goods and services for commerce.

16.     **Defendant MetLife Insurance Company USA** (formerly, MetLife Insurance Company of Connecticut ("MICC")), is a Delaware corporation originally incorporated in Connecticut in 1863.  Its principal place of business is in North Carolina. MetLife Insurance Company USA is a wholly-owned subsidiary of MetLife, Inc. It offers individual annuities, individual life insurance, and institutional protection and asset accumulation products throughout the United States, and therefore engages in interstate commerce or engages in the delivery of goods and services for commerce. MetLife Insurance Company USA was formed in November 2014 after a corporate merger. Its predecessor company, MetLife Insurance Company of Connecticut ("MICC"), was a Connecticut corporation until the November 2014 merger, at which time it re-domesticated from Connecticut to Delaware.

17.     At all relevant times all Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff and class members.[2]

---

[2] Unless otherwise specified, the term "class members" as used in the Complaint refers collectively to the members of the FLSA collective alleged under 29 U.S.C. § 216(b) and to the members of the Connecticut class alleged under Fed. R. Civ. P. 23.  The term includes Plaintiff McKinney.

18.     Plaintiff and the class members have been and are employed by MetLife.

19.     Upon information and belief, Defendants hired, fired, and supervised LTD Claim Specialists.

20.     Upon information and belief, Defendants controlled the terms of LTD Claim Specialists' employment, including the compensation they were paid and the hours they worked.

21.     At all relevant times, the unlawful conduct against Plaintiff and class members, as described in each and all of the foregoing paragraphs, was motivated, in whole or in part, to serve MetLife.

22.     At all relevant times, upon information and belief, the unlawful conduct described in each and all of the foregoing paragraphs was reasonably foreseeable by MetLife, and committed under actual or apparent authority granted by MetLife, such that all of the aforementioned unlawful conduct is legally attributed to MetLife.

23.     The overtime wage provisions set forth in § 207 of the FLSA, and in the Connecticut Minimum Wage Act, and regulations, and the wage payment provisions set forth in Connecticut law, apply to Defendants.

24.     The class members' jobs are not positions involving work that falls within any exception or exemption set forth in 29 U.S.C. § 213(a)(1) or Conn. Gen. Stat. § 31-76i.

## IV. <u>FACTUAL ALLEGATIONS</u>

25.     MetLife is a major player in the long term disability market, and it provides long term disability coverage for a number of companies throughout the United States,

including Verizon, Morgan Stanley, and Campbell's Soup Company. These companies are MetLife's clients.

26.     As LTD Claim Specialists, Plaintiff and class members gathered information from claimants (e.g. covered employees under the Campbell's plan), and collected medical data and other relevant information. They then forwarded this documentation to various specialized staff or managers who gave opinions on whether to take action on a claim. For example, whenever a change in a claimant's medical status might affect a claim, Plaintiff and class members had to contact MetLife's nursing staff for an opinion concerning the claimant's prognosis based on his/her medical records. Similarly, MetLife required LTD Claim Specialists to contact MetLife's "vocational" staff for opinions on whether a claimant's capacity was within occupational requirements.

27.     Plaintiff and the class members did not have the authority to make claims decisions. Rather, it was Unit Leaders—a position two levels above LTD Claim Specialists—who decided whether to take action on a claim (such as approving, rejecting, or terminating the claim).

28.     Plaintiff and class members routinely worked more than 8 hours a day and 40 hours per week for Defendants. Indeed, in order to fulfill the basic requirements of the position, LTD Claim Specialists regularly work between 45 and 60 hours per week, which Defendants knew or should have known from the work so assigned.

29.     For instance, Plaintiff McKinney regularly started her workday between 8:00 and 8:30 a.m. and stopped working between 5:00 and 5:30 p.m. She also routinely worked six or more hours per week from home on nights and weekends. Therefore, Plaintiff often worked between 10 and 20 hours of overtime per week.

30.     At the time of Plaintiff McKinney's hiring in September 2013, both LTD Claim Specialists and Short Term Disability Claim Specialists were categorized as "non-exempt" by MetLife. In or around November 2013, MetLife deliberately reclassified Plaintiff and the class members as "exempt" as a cost-cutting measure even though their job responsibilities did not change. By contrast, Short Term Disability Claim Specialists remained classified as non-exempt hourly employees and continued to receive overtime pay.

31.     Prior to the reclassification in November 2013, MetLife paid LTD Claim Specialists overtime compensation when they worked over 40 hours in a workweek—as LTD Claim Specialists regularly did.  Accordingly, MetLife was fully aware that LTD Claim Specialists commonly worked over 40 hours per week.

32.     Following the reclassification, Plaintiff – and all other class members – received no overtime compensation for working greater than 40 hours in a given week.

33.     On February 19, 2016, Plaintiff McKinney filed a complaint against MetLife with the Connecticut Department of Labor. After conducting an investigation, the Department of Labor informed Plaintiff that MetLife misclassified her position as exempt because, *inter alia*, Plaintiff had no direct reports, no advanced education, and could not make independent decisions.

34.     In lieu of further pursuing a remedy with the Connecticut Department of Labor, Ms. McKinney exercised her right to take her case to this Court.

**A. LTD Claim Specialists Do Not Perform Work Directly Related to the Management or General Business Operations of MetLife or MetLife's Clients.**

35.     LTD Claim Specialists do not perform work directly related to the management or general business operations of MetLife. As a large multinational insurance corporation, MetLife is in the business of providing insurance and processing claims. Class members process claims for disability benefits made by the employees of MetLife's clients. Accordingly, they perform work directly related to the **products** and **services** MetLife offers its client.  LTD Claim Specialists are not involved with the management or general business operations of MetLife.

36.     Similarly, LTD Claim Specialists do not perform work directly related to the management or general business operations of MetLife's clients. The claimants, who are employees of MetLife's clients, generally have claims for insurance benefits from MetLife. Class members deal principally with these claimants; not with MetLife's clients. LTD Claim Specialists' job duties do not affect the finances, management, or business operations of MetLife's clients.

**B.     LTD Claim Specialists Do Not Exercise Discretion or Independent Judgment as to Matters of Significance.**

37.     As highly controlled and micromanaged employees, LTD Claim Specialists' primary job duties do not require the exercise of discretion or independent judgment on matters of significance. To the extent that class members have any decision-making authority, it is severely limited.  Further, LTD Claim Specialists have no discretion with respect to matters of significance.

38.     For instance, in order to make any changes to the status of a claim, class members must follow a claims processing protocol, whereby they gather information and must forward it to various specialized staff or managers. LTD Claim Specialists have no

authority to waive or deviate from these established policies and procedures without prior approval.

39.     Moreover, class members have no authority to negotiate or bind the company on significant matters. Indeed, LTD Claim Specialists are required to seek the approval of Operations Managers, positioned three levels above them, in order to make changes to any claim exceeding approximately $24,000 in monthly benefits.

40.     LTD Claim Specialists likewise lack authority to commit MetLife in matters that have significant financial impact.  For instance, LTD Claim Specialists are required to obtain approval from Unit Leaders to request medical records costing more than $100; to order surveillance of claimants (i.e. to hire an individual to monitor a claimant to ensure that he/she is disabled); and to order "media checks" (e.g. checking claimants' social media for evidence of disability).

41.     LTD Claim Specialists are not authorized to carry out major assignments or investigate and resolve matters of significance.  Rather, they merely gather and pass along information relating to the claims of individual claimants who are insured under the MetLife client's accounts.

42.     LTD Claim Specialists do not negotiate the terms of clients' policies.  For example, LTD Claim Specialists (like Ms. McKinney) who work on the Campbell's account principally interact with Campbell's employees (or other beneficiaries, such as spouses) who file disability claims under Campbell's policy. Class members have no authority to negotiate with Campbell's over policy terms.

43.     Class members also lack the authority to represent MetLife in handling complaints, arbitrating disputes, or resolving grievances. They merely gather information

and forward it to various specialized staff or Unit Leaders. Only the Unit Leaders have the authority to decide whether MetLife will accept, reject, modify, or terminate a disability claim.

44.     As foot soldiers in MetLife's claims-processing army, LTD Claim Specialists have no direct reports and no authority to delegate work, hire, fire, or discipline other employees. They also lack any authority to formulate, affect, interpret, or implement management policies or operating practices. They are similarly not involved in planning long- or short-term business objectives for MetLife. Their job is straightforward: they gather information and pass it along to various specialized staff or managers.

45.     In short, Plaintiff and class members do not exercise discretion or independent judgment as to any matters of significance.

## V.  COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

46.     Plaintiff McKinney brings FLSA claims on behalf of herself and other similarly situated individuals who worked for Defendants.

47.     Specifically, Plaintiff brings FLSA claims on behalf of FLSA Collective Action Members, defined as:

> All individuals who worked for MetLife in the United States as LTD Claim Specialists (including all "Claim Specialists," "Senior Claim Specialists," "Case Managers," and "Senior Case Managers" – as well as any other individual holding a similar job position – who worked on long term disability claims) at any time between three years before the filing of the Complaint and the date of final judgment.

48.     Plaintiff consents to be a party plaintiff in this lawsuit against Defendants to recover unpaid overtime pay and remedy the alleged violations of the FLSA. Plaintiff's Consent to Join Form is attached to this Complaint.

49.     The FLSA claims are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA (29 U.S.C. § 216(b)).

50.     Plaintiff and the other FLSA Collective Action Members perform and have consistently performed substantially similar job duties and are subject to the same policies and restrictions. For example, the FLSA Collective Action Members all gather information concerning Long Term Disability claims and forward that information to various specialized staff or managers. All FLSA Collective Action Members are subject to oversight by Unit Leaders and lack authority to make final claims decisions.

51.     All FLSA Collective Action Members were and/or are paid in the same manner and have been subject to Defendants' common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at least one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek.  The claims of Plaintiff McKinney stated herein are essentially the same as those of the other FLSA Collective Action Members.

52.     Defendants intentionally misclassified Plaintiff and the other FLSA Collective Action Members as exempt from the FLSA's overtime pay requirements.  The FLSA Collective Action Members are not covered by any exemption to the protections of the FLSA, including its overtime pay requirements.

53.     There are numerous FLSA Collective Action Members who have been, and/or are misclassified as exempt under the FLSA, and they would benefit from the issuance of a court supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

54.     At all relevant times, Defendants have been, and continue to be, "employer[s]" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.   At all relevant times, Defendants have employed "employee[s]," including Plaintiff and each of the FLSA Collective Action Members.

## VI.   CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23 AND THE CONNECTICUT MINIMUM WAGE ACT

55.     Representative Plaintiff Stephanie McKinney brings this class action to recover damages under Connecticut law, and to recover overtime wages on behalf of herself and the following class of current and former LTD Claim Specialists in Connecticut who have been deprived of lawful overtime wages as mandated by Connecticut labor law and governing regulations. This action includes all such employees whom MetLife continues to deprive of required overtime wages in the future. The Connecticut class is defined as follows:

> All individuals who worked for MetLife in Connecticut as LTD Claim Specialists (including all "Claim Specialists," "Senior Claim Specialists," "Case Managers," and "Senior Case Managers" – as well as any other individual holding a similar job position – who worked on long term disability claims) at any time from February 19, 2014 through the date of final judgment.

56.     This action is properly brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57.     The Connecticut class consists of well over 40 persons and is so numerous that joinder of all members, whether required or permitted, is impracticable.

58.     There exist questions of fact and law common to the Connecticut class which predominate over any questions affecting only individual members including:

1) whether Defendants improperly withheld overtime wages from Connecticut class members;

2) whether Defendants are liable to the Connecticut class; and

3) whether Defendants had a good faith belief that the failure to pay Connecticut class members overtime was in compliance with the law.

59.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Connecticut class, and the relief sought is typical of the relief which would be sought by each member of the Connecticut class in separate actions.   Like all Connecticut class members, Plaintiff was subject to Defendants' corporate policy, practice, and procedure of (mis)classifying her as an exempt employee and not paying her at least one-and-one-half times her regular rate for work in excess of forty (40) hours per workweek.   The damages suffered by Plaintiff and the other Connecticut class members arise from the same unlawful policies, practices and procedures.

60.     Plaintiff is able to fairly and adequately protect the interests of the Connecticut class and has no interests antagonistic to the Connecticut class.

61.     Plaintiff has hired counsel who are able and experienced in class action litigation, and will fairly and adequately protect the interests of the class.

62.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.   Because the losses, injuries and damages

suffered by each of the individual Connecticut class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Connecticut class members to redress the wrongs done to them.  Moreover, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action will result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Connecticut class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Connecticut class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

63.    Upon information and belief, Defendants and other employers throughout the state violate the Connecticut Minimum Wage Act.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Likewise, both current and former employees are often fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

64.     Additionally, Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VII.  CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)

65.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully alleged herein.

66.     Because MetLife willfully violated the FLSA by misclassifying Plaintiff and class members as exempt employees, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

67.     MetLife has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by misclassifying Plaintiff and similarly-situated LTD Claim Specialists as "exempt" employees, and thereby failing and refusing to pay the them proper hourly wage compensation in accordance with § 207 of the FLSA.

68.     Plaintiff and the class members are not employed in a "bona fide executive, administrative, or professional capacity" pursuant to 29 U.S.C. § 213(a)(1) and corresponding regulations.  Plaintiff and the class members are not subject to any other exemptions set forth in the FLSA or administrative regulations.

69.     As a result of Defendants' violations of the FLSA, Plaintiff, as well as all others similarly situated, have suffered damages by being denied overtime wages in accordance with § 207 of the FLSA.

15

70.     Defendants have not made a good faith effort to comply with the FLSA as to its compensation of Plaintiff and other similarly situated present and former LTD Claim Specialists.

71.     Because of Defendants' unlawful acts, Plaintiff and all similarly situated current and former LTD Claim Specialists have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT II: VIOLATION OF THE CONNECTICUT MINIMUM WAGE ACT

72.     Representative Plaintiff McKinney incorporates by reference the preceding allegations of this Complaint as if fully alleged herein.

73.     MetLife improperly failed to compensate the Connecticut employee class members, whom the company has misclassified as exempt under Conn. Gen. Stat. § 31-76i and corresponding regulations.   These misclassified class members have performed overtime work and MetLife has deprived them of overtime compensation in violation of the provisions of the Minimum Wage Act, Conn. Gen. Stat. § 31-58, *et seq.*, and corresponding regulations of the Connecticut Department of Labor.

74.     Under Connecticut law: "Any employer who pays or agrees to pay an employee less than the minimum fair wage or overtime wage shall be deemed in violation of the provisions of this part."  Conn. Gen. Stat. § 31-60(a).

75.     A "wage" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3).

76.     In Connecticut, the workweek is forty hours. If an employee works more than forty hours, Conn. Gen. Stat. § 31-76c requires the employer to pay the employee at the rate of time and a half.

77.     An employer in Connecticut is required to pay "all moneys due each employee [including overtime wages] on a regular pay day…" Conn. Gen. Stat. § 31-71b.

78.     In order to facilitate these objectives, Connecticut law further provides that an employer "shall keep at the place of employment for a period of three years a true and accurate record of the hours worked by, and the wages paid by him to, each employee." Conn. Gen. Stat. § 31-66.

79.     MetLife is an "employer" within the meaning of the Connecticut labor statutes, and Plaintiff and the class members are "employees" of MetLife under Conn. Gen. Stat. § 31-58.

80.     MetLife deliberately and improperly misclassifies Plaintiff and the class members as exempt employees and denies them the overtime compensation to which they are entitled under Connecticut law.  Plaintiff and the class members are not in fact "employed in a bona fide executive, administrative or professional capacity" § 31-76i(e), as defined in relevant regulations (including Conn. Agencies Regs. §§ 31-60-14 and 31-60-15) or subject to any other enumerated exception.

81.     MetLife has failed to pay, and continues to fail to pay Plaintiff and the class members all wages due to them – including overtime pay – at the end of their designated pay periods and to the present date, in violation of Conn. Gen. Stat. § 31-71b.

82.     Consequently, under Conn. Gen. Stat. §§ 31-68, 31-72, and 52-596, Plaintiff and the class members are entitled to recover twice the amount of unpaid

compensation owed to them for the class period, as well as reasonable attorneys' fees and costs.

## VIII. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly-situated persons, prays for the following relief:

A.      At the earliest possible time, the FLSA action be designated as a collective action and notice of the action be issued to apprise all LTD Claim Specialists of the pendency of this action and permit them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

B.      The Connecticut Minimum Wage action be certified as a class action pursuant to the Federal Rules of Civil Procedure Rule 23;

C.      An award in excess of $50,000,000 to compensate all class members for all wage and liquidated damages recoverable by law;

D.      Unpaid wages and liquidated damages pursuant to the FLSA and supporting regulations, in an amount to be determined at trial;

E.      Unpaid wages and liquidated damages pursuant to the Connecticut Minimum Wage Act and supporting regulations, in an amount to be determined at trial;

F.   An injunction requiring Defendants to pay all statutorily-required wages pursuant to Connecticut labor law;

G.   Declare Defendants' Conduct charged herein to be illegal;

H.   Attorneys' fees and costs;

I.   Pre-judgment and post-judgment interest; and

J.   Such other relief as this Court shall deem just and proper.

## X. DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: 2/7/2017

Respectfully submitted,

-s- Daniel Schneider
Attorney Daniel Schneider
Federal Bar Number:  ct12308
**SCHNEIDER LAW FIRM, LLC**
112 Broad St
Milford, CT 06460
Telephone: (203) 874-0030
Fax number: (203) 878-0117
daniel@Schneider-Law-firm.com

-- and --

Jeremy Heisler*
Andrew Melzer*
Michael D. Palmer*
David Tracey*
**SANFORD HEISLER, LLP**
1350 Avenue of the Americas
Floor 31
New York, NY 10019

19

Telephone:  (646) 402-5650
Facsimile: (646) 402-5651
jheisler@sanfordheisler.com
amelzer@sanfordheisler.com
mpalmer@sanfordheisler.com
dtracey@sanfordheisler.com
*Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff Stephanie McKinney,*
*the Opt-In Collective Action Plaintiff, and*
*the Proposed Class*